UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELLEN GAUBE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO.: |
| | : | 3:13-cv-01845 (VAB) |
| v. | : | |
| | : | |
| DAY KIMBALL HOSPITAL and | : | |
| DAY KIMBALL HEALTHCARE, INC., | : | MARCH 24, 2015 |
| | : | |
| Defendants. | : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

**I.    INTRODUCTION**

Plaintiff Ellen Gaube ("Plaintiff") brought this action against her former employers,

Day Kimball Hospital and Day Kimball Healthcare, Inc. ("Defendants").  On August 8,

2014, the Court dismissed Plaintiff's original Complaint [ECF No. 1] in its entirety for

failure to state claims upon which relief can be granted and gave Plaintiff leave to file an

amended complaint.  Plaintiff's First Amended Complaint [ECF No. 22] ("Amended

Complaint") is nearly identical to her original Complaint, except for three paragraphs to

which Plaintiff added mostly conclusory statements and duplicative allegations.

(*Compare* ECF No. 1 *with* ECF No. 22.)

Defendants now move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all three

counts of the Amended Complaint for failure to state claims upon which relief can be

granted.  After oral argument and consideration of Defendants' Motion to Dismiss [ECF

No. 23] and accompanying memorandum [ECF No. 23-1], Plaintiff's Motion in

Opposition [ECF No. 25] and accompanying memorandum [ECF No. 24], and

Defendants' Reply [ECF No. 26], the Court concludes that Plaintiff has again failed to plead viable claims.

First, Plaintiff alleges discriminatory acts of retaliation, but the alleged acts of retaliation have nothing to do with her being a member of a protected class (*e.g.*, by virtue of her race or sex) or her speaking out against discrimination, but instead relate to her complaints about workplace conditions.  Second, she alleges a violation of the Americans with Disabilities Act ("ADA"), but fails to allege facts sufficient to sustain such a claim in two critical respects.  Finally, she alleges a federal common law claim of intentional infliction of emotional distress, even though no such claim exists.  Accordingly, the Court hereby orders that Defendants' Motion to Dismiss [ECF No. 23] is GRANTED.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party, *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007), and generally may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## III.   STATEMENT OF FACTS

Plaintiff was employed by Defendants as a registered pharmacist from November 8, 1999 until her termination effective May 8, 2012.  (Am. Compl. ¶¶ 7, 9.)  In her view, "[t]he job of a Registered Pharmacist requires keen focus and attention to detail."  (*Id.* ¶ 12.)  Beginning in or about March 2010, Plaintiff observed three conditions within the pharmacy that distracted her and hindered her ability to perform her job.  (*Id.*)

First, Plaintiff observed poor air quality resulting from forced air heat through ceiling vents.  (*Id.* ¶ 13.)  Plaintiff developed a chronic cough.  (*Id.*)  She saw a pulmonologist for the cough and for her previously diagnosed asthma, but the pulmonologist was unable to explain the cough.  (*Id.*)

Second, Plaintiff observed a high level of noise within the pharmacy generated by ringing telephones, talking, operation of office equipment, use of refrigerators and freezers, and overhead paging.  (*Id.* ¶ 14.)  Upon Plaintiff's suggestion, Defendants moved pharmacists to another area, but "it did little to help with the distraction problem." (*Id.*)  Plaintiff also suggested headsets and dedicated telephone lines for pharmacy technicians, but Defendants did not implement them.  (*Id.*)

Third, Plaintiff found the pharmacy to be overly cool throughout the year.  (*Id.* ¶ 15.)  Plaintiff regularly used a blanket to cover her lap while working.  (*Id.*)

Plaintiff complained about each of the three conditions, and, according to Plaintiff, Defendants became increasingly annoyed with Plaintiff for voicing her complaints.  (*Id.* ¶ 16.)  Defendants allegedly retaliated against Plaintiff by giving her verbal warnings for six errors that she committed in dispensing medication.  (*Id.*)  No patient harm was reported in any of these incidents, and Plaintiff alleges that other pharmacy personnel did not receive discipline for "equally bad or even worse behavior." (*Id.*; *see id.* ¶¶ 18-19.)

Plaintiff's co-workers also complained about Plaintiff's work and expressed concern that she was making too many errors.  (*Id.* ¶ 19.)  Plaintiff grew afraid of making mistakes when entering orders for expensive and potentially dangerous oncology medications.  (*Id.* ¶ 20.)  Plaintiff alleges that Defendants' warnings, her co-workers' criticisms, and the three negative working conditions negatively affected Plaintiff's physical and emotional well-being, created a hostile work environment, and intensified her pre-existing depression, insomnia, and migraines.  (*Id.* ¶ 21.)  Plaintiff alleges that her prescribed medication for her depression, insomnia, and migraines may have contributed to her occasional daytime drowsiness, affected her concentration, and contributed to some of her errors.  (*Id.*)  Finally, she alleges that Defendants did not propose any accommodation, such as a leave of absence, addressing the air quality, noise, and temperature, or consistently enforcing policies and performance standards among all pharmacy personnel.  (*Id.*)

**IV.    DISCUSSION**

    **A.    Count One – Violation of Civil Rights Act of 1964**

Count One alleges retaliation and hostile work environment in violation of Title VII of the Civil Rights Act of 1964.  Specifically, Plaintiff asserts that Defendants retaliated against her for complaining about the alleged poor air quality, high noise levels, and cool temperatures by giving her verbal warnings for errors that she committed in dispensing medication and by terminating her employment.  (*Id.* at 7-8, ¶ 22).  Plaintiff further alleges that Defendants' "conscious, continuous, and severe" harassment created a hostile work environment.  (*See id.*)  Finally, Plaintiff alleges that she "engaged in protected activity" and was "disabled within the [ADA]."  (*Id.*)

        **i.    Retaliation**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Title VII's anti-retaliation provision prohibits discrimination against an employee who has "opposed any practice" prohibited by Title VII.  42 U.S.C. § 2000e-3(a).  Thus, an employer may not take "materially adverse" action against an employee for opposing employment discrimination on the basis of race, color, religion, sex, or national origin. *See id.*; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006).

To state a claim for retaliation under Title VII, a plaintiff must plausibly allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted).  The term "protected activity" refers to

action taken to oppose discrimination prohibited by Title VII.  *See* 42 U.S.C. §
2000e-3(a); *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012).

Plaintiff has failed to plead adequately the first element of her claim for retaliation
under Title VII.

First, Plaintiff's conclusory statement that she "engaged in protected activity,"
(Am. Compl. at 7, ¶ 22), does not satisfy the pleading standard under Fed. R. Civ. P.
8(a)(2).  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S.
at 555 (court ruling on motion to dismiss is not bound to accept as true legal
conclusions couched as factual allegations).

Second, Plaintiff has not alleged that she opposed discrimination prohibited by
Title VII (*i.e.*, employment discrimination on the basis of race, color, religion, sex, or
national origin).  *See* 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).  Rather, she alleges that her
complaints about poor air quality, high noise levels, and cool temperatures prompted
Defendants' retaliation.  (Am. Compl. at 7, ¶ 22).  Such complaints do not constitute
protected activity under Title VII because they do not oppose employment discrimination
on the basis of race, color, religion, sex, or national origin.  *See* 42 U.S.C. §§ 2000e-
2(a), 2000e-3(a).

Third, Plaintiff notes that she was "disabled within the [ADA]," (Am. Compl. at 7, ¶
22), but does not allege that Defendants retaliated against her for opposing disability
discrimination.  Even if Defendants retaliated against Plaintiff for opposing disability
discrimination, Plaintiff's retaliation claim under Title VII would still fail because opposing

6

disability discrimination does not constitute protected activity because Title VII does not prohibit disability discrimination.  *See* 42 U.S.C. § 2000e-2(a).

For the foregoing reasons, Plaintiff's Title VII retaliation claim is dismissed for failure to state a claim.

### ii.    Hostile Work Environment

To state a claim for hostile work environment under Title VII, a plaintiff must allege harassment on the basis of race, color, religion, sex, or national origin that amounted to a hostile work environment.  *See* 42 U.S.C. § 2000e-2(a); *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001) ("Under Title VII, a hostile work environment is one form of disparate treatment on the basis of 'race, color, religion, sex, or national origin.'") (quoting 42 U.S.C. § 2000e-2(a)(1)); *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (plaintiff may establish claim under Title VII "by demonstrating that harassment on [the basis of race, color, religion, sex, or national origin] amounted to a hostile work environment."); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (to establish hostile work environment, plaintiff must "demonstrate that she was subjected to the hostility because of her membership in a protected class."); *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("It is . . . important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.").

Plaintiff has not alleged harassment or discrimination on the basis of race, color, religion, sex, or national origin.  Accordingly, Plaintiff's Title VII hostile work environment claim is dismissed for failure to state a claim.

### iii.    Civil Rights Act of 1991

Count One's heading suggests that Plaintiff alleges a violation of the Civil Rights Act of 1991.  (*See* Am. Compl. at 7.)  That Act amended 42 U.S.C. § 1981, which is not applicable here because Plaintiff has not alleged race-based discrimination, and created 42 U.S.C. § 1981a, which provides additional remedies to litigants who prevail under Title VII and the ADA, but does not create an independent cause of action.  *See, e.g.*, *Javier v. Deringer-Ney, Inc.*, 578 F. Supp. 2d 368, 372 (D. Conn. 2008) ("[Section 1981a] does not provide an independent cause of action. . . . It is merely a remedies provision, outlining certain damages that are available for Title VII violations, including punitive damages.").  To the extent that Plaintiff attempts to assert a separate cause of action under § 1981a, it is dismissed.

### B.    Count Two – Violation of ADA for Failure to Accommodate

Count Two alleges that Defendants violated the ADA by failing to provide Plaintiff with reasonable accommodations for her depression, insomnia, and migraines.  (Am. Compl. at 8, ¶ 22.)  However, Defendants moved to dismiss Count Two on the ground that Plaintiff failed to state a claim for retaliation under the ADA.  (ECF No. 23 at 1; ECF No. 23-1 at 10-11.)  Plaintiff's opposing memorandum reiterated her claim for failure to accommodate and did not discuss retaliation.  (ECF No. 24 at 3).  Nonetheless, Defendant's reply memorandum again argued that Plaintiff failed to state a claim for retaliation.  (ECF No. 26 at 3-4.)  Because Count Two alleges only a claim for failure to provide reasonable accommodations, the Court will not address retaliation under the ADA.  *See Bernstein v. City of New York,* No. 06 Civ. 895(RMB), 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007) ("[C]laims not specifically asserted in the complaint may

not be considered by courts when deciding a motion to dismiss.") (internal quotation marks omitted); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

The ADA prohibits employment discrimination against a qualified individual on the basis of disability.  42 U.S.C. § 12112(a).  Discrimination includes not making reasonable accommodations to the known physical or mental limitations of a qualified individual with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship.  42 U.S.C. § 12112(b)(5)(A). "Disability" is defined, in relevant part,[1] as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).

To state a claim for failure to accommodate, a plaintiff plausibly must allege four elements: (1) she is a person with a disability within the meaning of the ADA; (2) her employer is covered by the ADA and had notice of her disability; (3) she could perform the essential functions of her job with or without reasonable accommodations; and (4) the defendant refused to make such accommodations.  *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006).  Having failed to plead adequately the second and third elements, Plaintiff has failed to state a claim under the ADA.

### i.    First Element of ADA Claim: Disability

As to the first element, Plaintiff alleges that she was "disabled within the [ADA]." (Am. Compl. at 7, ¶ 22.)  As stated *supra*, such conclusory statements do not satisfy the

---

[1] The term "disability" also includes (i) a record of a physical or mental impairment that substantially limits one or more major life activities, and (ii) being regarded as having such an impairment.  42 U.S.C. §§ 12102(1)(B), (C).  Plaintiff has not alleged that her disability fits within either of these alternative definitions, and therefore the Court will not address them.

pleading standard under Fed. R. Civ. P. 8(a)(2).  However, Plaintiff also alleges that her depression, migraines, and insomnia were "disabilities" that substantially limited major life activities, including "her ability to concentrate, to avoid migraines due to the stress, to get a restful sleep and to not feel depressed."  (*See id.* at 8, ¶ 22.)  She alleges that her depression, migraines, and insomnia are "long-term" impairments and that she "regularly consults with her physician for treatment."  (*Id.*)

Courts apply a three-prong test to determine whether an individual is disabled under the ADA.  *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002).  First, the plaintiff must show the presence of a physical or mental impairment. *Id.*  Second, the plaintiff must identify the activity claimed to be impaired and establish that it constitutes a major life activity.  *Id.*  Third, the plaintiff must show that the impairment substantially limits that major life activity.  *Id.*

### 1.   Physical or Mental Impairment

As to the first prong, the ADA does not define "physical or mental impairment," but the U.S. Equal Employment Opportunity Commission ("EEOC") has issued regulations implementing the ADA, which define that term to include "[a]ny mental or psychological disorder, such as . . . emotional or mental illness."  29 C.F.R. § 1630.2(h). Although they have no binding effect on this Court, the EEOC's regulations are entitled to "great deference" when interpreting the ADA.  *Muller v. Costello*, 187 F.3d 298, 312 (2d Cir. 1999); *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) ("While [the EEOC's] regulations are not binding, they provide us with guidance in interpreting the ADA").

10

Depression can constitute an impairment under the ADA, provided it is not a "temporary psychological impairment." *Oblas v. Am. Home Assur. Co.*, 199 F.3d 1323, 1999 WL 759026, at *1 (2d Cir. 1999); *accord Conge v. Sikorsky Aircraft Corp.*, No. 3:05-CV-1650 PCD, 2007 WL 4365676, at *6 (D. Conn. Dec. 11, 2007) ("Depression can qualify as a disability for purposes of the ADA.").  Courts also have recognized that migraines and insomnia can be impairments under the ADA.  *See, e.g.*, *Stephens v. Potter*, No. 3:06-CV-1290CFD, 2009 WL 2346771, at *4 (D. Conn. July 29, 2009) (reasonable juror could find that plaintiff's migraine condition constituted physical impairment that substantially limited major life activity of working); *Shirley v. Integrated Sys. Improvement Servs., Inc.*, No. CV-11-852-TUC-JGZ, 2012 WL 3776882, at *2 (D. Ariz. Aug. 31, 2012) (plaintiff plausibly alleged that sleep apnea and insomnia constituted impairments that substantially limited major life activity of sleeping).  Taking as true Plaintiff's allegations that she suffers from "long-term" depression, migraines, and insomnia, has been prescribed medication for each, and regularly sees her physician for treatment, (Am. Compl. ¶ 21; *id* at 8, ¶ 22), the Court concludes that Plaintiff plausibly alleged that she suffers from a "physical or mental impairment" under the ADA.

## 2.    Major Life Activity

As to the second prong, Plaintiff identifies "her ability to concentrate, to avoid migraines due to the stress, to get a restful sleep and to not feel depressed" as the major life activities impaired by her depression, migraines, and insomnia.  (*See* Am. Compl. at 8, ¶ 22.)  The ADA provides a non-exhaustive list of activities that constitute major life activities, including "concentrating" and "sleeping."  42 U.S.C. § 12102(2)(A).

11

Thus, Plaintiff has sufficiently identified concentrating and sleeping as major life activities that were allegedly impaired.  Brain function is also a major life activity, 42 U.S.C. § 12102(2)(B), and, although the Amended Complaint does not specifically allege that Plaintiff's depression substantially limited her brain function, the Court, for reasons explained *infra*, reads Plaintiff's allegation that she suffers from depression to identify brain function as a major life activity that was allegedly impaired, *see* 29 C.F.R. §§ 1630.2(j)(3)(ii)-(iii) ("in virtually all cases," major depressive disorder will, "at a minimum," be found to impose a substantial limitation on major life activity of brain function).

### 3.    Substantial Limitation of Major Life Activity

As to the third prong, Plaintiff alleges that her above-identified major life activities were "substantially limited."  (Am. Compl. at 8, ¶ 22.)  Historically, courts strictly construed the term "substantially limits" to create a demanding standard.  *Smith v. Cingular Wireless*, 579 F. Supp. 2d 231, 241 (D. Conn. 2008).  But in 2008, Congress passed the Americans with Disabilities Act Amendments Act ("ADAAA"), expressly rejecting Supreme Court holdings that "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress."  Pub. L. No. 110–325, 122 Stat. 3553.  The EEOC then issued regulations providing that the term "substantially limits" must be "construed broadly in favor of expansive coverage."  29 C.F.R. § 1630.2(j)(1)(i).  It is "not meant to be a demanding standard," does not require a showing that the impairment prevented, or significantly or severely restricted a major life activity, and should not be the "primary object of attention" in ADA cases or "demand extensive analysis."  29 C.F.R. §§ 1630.2(j)(1)(i)–(iii).

12

Notwithstanding the ADAAA's direction to broadly construe the term "substantially limits," an ADA claimant still must satisfy the pleading requirements of Fed. R. Civ. P. 8, which require more than "naked assertion[s]" devoid of "further factual enhancement" in order to "raise a right to relief above the speculative level" and "nudge . . . claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 557, 570; *see also Redmon v. United States Capitol Police*, No. 13-CV-1323 (TSC), 2015 WL 682404, at *6 (D.D.C. Feb. 18, 2015) (specific allegations regarding substantial limitation are not required after passage of ADAAA, but "plaintiff must still plead enough to make a claim plausible."). Thus, since the enactment of the ADAAA, courts have dismissed ADA claims at the pleading stage for failure to adequately allege substantial limitation of a major life activity. *See, e.g.*, *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 210 (D. Conn. 2012) (noting ADAAA's changes in favor of broad coverage but dismissing ADA claim where plaintiff did not plead sufficient facts showing how transverse myelitis substantially limited major life activity); *Quarles v. Maryland Dep't of Human Res.*, No. CIV.A. MJG-13-3553, 2014 WL 6941336, at *3 n.8, *4 (D. Md. Dec. 5, 2014) (acknowledging ADAAA but dismissing ADA claim where plaintiff alleged that her diabetes "limit[ed] her abilities to move freely, walk steps, or travel from building to building" without providing specific allegations to show that her major life activity of walking was substantially limited); *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) (noting that "even under the relaxed ADAAA standards, a plaintiff is still required to plead a substantially limiting impairment" and holding that plaintiff's allegations that his torn ligament caused him pain, that his medication caused difficulty staying awake and concentrating, and that his

knee cast caused difficulty moving and driving did not adequately allege existence of substantially limiting impairment).

As to the major life activity of sleeping, Plaintiff alleges only that her depression, migraines, and insomnia "substantially limited Plaintiff's . . . ability to get a restful sleep." (Am. Compl. at 8, ¶ 22.)  But Plaintiff must plausibly allege that her sleep is substantially limited "compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).

Courts in this Circuit have recognized that because "[d]ifficulty sleeping is extremely widespread," a substantial limitation on sleeping must be "worse than is suffered by a large portion of the nation's adult population."  *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998); *see also Krachenfels v. N. Shore Long Island Jewish Health Sys.*, No. 13-CV-243 JFB WDW, 2014 WL 3867560, at *13 (E.D.N.Y. July 29, 2014) (allegation that discoid dermatitis caused plaintiff "some difficulty sleeping, without any more detail," did not satisfy requirement to show that plaintiff's limitation was worse than that suffered by large portion of adult population); *Farina v. Branford Bd. of Educ.*, No. 3:09-CV-49 JCH, 2010 WL 3829160, at *12 (D. Conn. Sept. 23, 2010) *aff'd*, 458 F. App'x 13 (2d Cir. 2011) (plaintiff's insomnia and fatigue did not substantially limit her ability to sleep where plaintiff stated that she had trouble sleeping "[p]robably almost nightly," that her sleep patterns varied, and that she regularly sleeps only two hours per night; plaintiff presented no evidence that her difficulty sleeping was worse than that suffered by large portion of adult population); *Dancause v. Mount Morris Cent. Sch. Dist.*, No. 13-CV-6019, 2013 WL 2946063, at *5 (W.D.N.Y. June 14, 2013) *aff'd*, No. 13-2725-CV, 2014 WL 5644883 (2d Cir. Nov. 5,

2014) (plaintiff failed to adequately plead substantial limitation where she merely alleged that periodontal disease prevented her from "adequately" sleeping and concentrating). Plaintiff's bare allegation that her health conditions substantially limited her ability to "get a restful sleep" is similarly devoid of further factual enhancement showing that her ability to sleep is substantially limited as compared to that of the general population.

As to the major life activity of concentrating, Plaintiff asserts that her health conditions "substantially limited . . . her ability to concentrate." (Am. Compl. at 8, ¶ 22). This conclusory statement does not satisfy the pleading standard under Fed. R. Civ. P. 8(a)(2). However, Plaintiff also alleges that the medication prescribed for her health conditions "*may have* contributed to Plaintiff's occasional daytime drowsiness and affected her concentration. This *may have* contributed to some of Plaintiff's errors." (Am. Compl. ¶ 21) (emphasis added). Thus, the only connection that Plaintiff draws between her impairments and her ability to concentrate is a speculative one.

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Conclusory, hypothetical speculation . . . is not entitled to an assumption of truth on a motion to dismiss." *Tsereteli v. Residential Asset Securitization Trust 1006-A8*, 697 F. Supp. 2d 546, 548 n.9 (S.D.N.Y. 2010). Moreover, the Amended Complaint does not contain allegations from which the Court could reasonably infer that Plaintiff's health conditions and/or medication caused her alleged concentration difficulty rather than the air quality, noise, and temperatures that Plaintiff repeatedly alleges were "distractions" that "hindered her from being able to perform her job." (*See* Am. Compl. ¶¶ 12, 13, 14, 15, 21.)

15

Having offered only speculative allegations as to the substantial limitation of her concentration, Plaintiff has not "nudged [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547.  Significantly, Plaintiff's counsel conceded at oral argument that Plaintiff had no further allegations to offer regarding the substantial limitation of her major life activities of sleeping and concentration.

As to the major life activity of brain function, the EEOC's regulations provide that certain impairments will, "in virtually all cases," be found to impose a substantial limitation on a major life activity and therefore result in a finding of a disability.  29 C.F.R. § 1630.2(j)(3)(ii).  For example, "it should easily be concluded that" major depressive disorder, at a minimum, substantially limits the major life activity of brain function.  29 C.F.R. § 1630.2(j)(3)(iii).  However, the regulations also caution that "not every impairment will constitute a disability."  29 C.F.R. § 1630.2(j)(1)(ii).  Accordingly, the Court is careful to avoid holding that the mere presence of the word "depression" in a complaint means that a plaintiff's brain function is substantially limited and that a disability under the ADA is plausibly alleged.

However, in this case, Plaintiff has alleged that her depression is "long-term," (Am. Compl. at 8, ¶ 22), that she has been prescribed medication for her depression, (*see id.* ¶ 21), and that she regularly sees her physician for treatment, (*id.* at 8, ¶ 22). Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has plausibly alleged that she suffers from a major depressive disorder.  *Cf. Bracken v. DASCO Home Med. Equip., Inc.*, No. 1:12-CV-892, 2014 WL 4388261, at *10 n.19 (S.D. Ohio Sept. 5, 2014) (discussing ADAAA's changes to standard for substantial limitation and concluding that, although plaintiff did not have specific diagnosis of major

16

depressive disorder, evidence that plaintiff was diagnosed with mood disorder, was prescribed anti-depressant medication, and displayed common symptom of major depressive disorder was sufficient to survive summary judgment).

In light of the strong presumption of finding a disability in cases involving a major depressive disorder, 29 C.F.R. §§ 1630.2(j)(3)(ii)-(iii), the Court concludes that Plaintiff plausibly alleged that she has a disability.

### ii.      Second Element of ADA Claim: Covered Entities

The second element of Plaintiff's ADA claim requires pleading that Defendants were covered by the ADA and had notice of Plaintiff's disability.  *Graves*, 457 F.3d at 184.  An "employer" is a "covered entity" under the ADA.  42 U.S.C. § 12111(2).  "Employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 12111(5)(A).  Plaintiff has not alleged that either defendant employed fifteen or more employees at any time, and has therefore failed to plausibly allege that Defendants are "covered entities" subject to the ADA.  Accordingly, Plaintiff has failed to state a claim.  *See, e.g.*, *Mohan v. La Rue Distrib.'s Inc.*, No. 06-CV-621 FB RLM, 2007 WL 3232225, at *1 (E.D.N.Y. Oct. 31, 2007) (complaint failed to state ADA claim because it did not allege that defendant was a covered entity with fifteen or more employees and instead merely referred to defendant's employees when describing plaintiff's contact with defendant); *Johnson v. Am. Arbitration Assoc.*, No. 98 CIV 6314 (DLC), 1999 WL 223154, at *2 (S.D.N.Y. Apr. 16, 1999) (dismissing ADA claim on absolute immunity grounds, but noting that failure to allege that defendants were covered entities was also ground for dismissal).

### iii.     Third Element of ADA Claim: Qualified Individual

The third element of Plaintiff's ADA claim requires pleading that she is a "qualified individual" under the ADA, meaning she could perform the essential functions of her job with or without reasonable accommodation.  42 U.S.C. §§ 12111(8), 12112(a); *Graves*, 457 F.3d at 184.  "Qualified" means that the individual satisfies the requisite skill, experience, education, and other job-related requirements of the position.  29 C.F.R. § 1630.2(m).  "Essential functions" means the fundamental job duties of the position.  29 C.F.R. § 1630.2(n)(1).  In addition to failing to satisfy the second element of her ADA claim by pleading that Defendants are covered entities, Plaintiff also fails to plead adequately that she is a qualified individual under the ADA.

Although Plaintiff provided some allegations regarding her education and experience, (Am. Compl. ¶¶ 8, 14), she has not alleged that she was able to perform the essential functions of her job with or without reasonable accommodation.  The Amended Complaint does not even contain a conclusory statement that Plaintiff was a qualified individual, or a formulaic recitation of the requirements for establishing that Plaintiff was a qualified individual.  *See, e.g.*, *Moran v. Wegmans Food Mkts., Inc.*, No. 13-CV-6343L, 2014 WL 7013972, at *2 (W.D.N.Y. Dec. 12, 2014) (dismissing ADA claim where plaintiff "fail[ed] anywhere in the complaint to allege that he was able to perform the requirements of the truck driver position, with or without a reasonable accommodation."); *Madonia v. S 37 Mgmt., Inc.*, No. 14 C 628, 2014 WL 4057430, at *2 (N.D. Ill. Aug. 14, 2014) (dismissing ADA claim where plaintiff adequately pled disability, but failed to allege that she would have been able to perform essential functions of job with accommodation of modified work schedule); *Jones v. HCA*, 16 F. Supp. 3d 622,

633 (E.D. Va. 2014) ("Because the Complaint is wholly devoid of any facts that plausibly indicate that Jones could perform the essential functions of the position with or without a reasonable accommodation, his claim for failure to accommodate fails.").

In fact, Plaintiff's own allegations raise questions as to her ability to perform essential functions of her job.  Plaintiff identifies "keen focus and attention to detail" as job requirements.  (Am. Compl. ¶ 12) ("The job of a Registered Pharmacist requires keen focus and attention to detail.").  Yet, as noted *supra*, she speculates that medication prescribed for her health conditions "may have contributed to Plaintiff's occasional daytime drowsiness and affected her concentration [and that] . . . . [t]his may have contributed to some of Plaintiff's errors."  (*Id.* ¶ 21.)  Moreover, Plaintiff admits that she becomes distracted by normal incidents of the workplace, such as noise generated from ringing telephones, talking, and in-use fax machines and label makers.  (*See id.* ¶ 14.)

These two fatal defects – the failure to allege adequately the second and third elements of an ADA claim – existed in Plaintiff's original Complaint.  The Court gave Plaintiff an opportunity to remedy them by amendment, and Plaintiff failed to do so.  The Court concludes that justice does not require granting Plaintiff a third opportunity to plead in this case, which opportunity Plaintiff has not sought.  *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 n.4 (2d Cir. 1998) (denying leave to re-plead because "the district court already gave [plaintiff] an opportunity to file an amended complaint designed to cure the very defect that remains."); *Cellular Technical Servs. Co. v. TruePosition, Inc.*, 609 F. Supp. 2d 223, 246-47 (D. Conn. 2009) (dismissing case with prejudice and without leave to amend because plaintiffs did not request leave to amend

and because plaintiffs had already been given opportunity to replead to cure identified deficiencies but "did not take advantage of that opportunity"); *S.S. v. Whitesboro Cent. Sch. Dist.*, No. 11-CV-0036, 2012 WL 280754, at *7 (N.D.N.Y. Jan. 31, 2012) (dismissing claim for failure to allege that defendant received federal funding and was therefore covered under Rehabilitation Act of 1973 and denying second opportunity to amend because plaintiff had already been afforded opportunity to amend defect and because amended complaint failed for other reasons).

For the foregoing reasons, Plaintiff's ADA claim is dismissed for failure to state a claim.

### C.    Count Three – Intentional Infliction of Emotional Distress

Count Three alleges intentional infliction of emotional distress in violation of federal common law.  (Am. Compl. at 9.)  With certain exceptions not applicable here, there is no federal common law.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 126 (2d Cir. 1999) (federal common law does not apply outside of certain issues and certain types of cases, such as questions about privilege in federal question cases and suits involving maritime claims).  Accordingly, Count Three fails to state a claim upon which relief can be granted and is hereby dismissed without prejudice to renewal in a court of competent jurisdiction.

Plaintiff's and Defendants' memoranda discussed Count Three under Connecticut law, and Plaintiff's counsel recognized at oral argument that Count Three should have been brought under Connecticut law.  However, even if the Court were to treat Count Three as a claim under Connecticut law, which it does not, the Court would

very likely dismiss that claim for lack of subject matter jurisdiction because Plaintiff's federal claims have been dismissed.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Even if the Court were to exercise supplemental jurisdiction over Count Three despite the dismissal of Plaintiff's federal law claims, which it does not, Count Three would be dismissed for failure to state a claim.  To state a claim for intentional infliction of emotional distress under Connecticut law, Plaintiff must plausibly allege that Defendants' conduct was extreme and outrageous.  *Appleton v. Bd. of Educ. of Town of Stonington*, 757 A.2d 1059, 1062 (Conn. 2000).  "[T]he bar for conduct that is found to be 'extreme and outrageous' is set very high."  *Holmes v. East Lyme*, 866 F.Supp.2d 108, 135 (D. Conn. 2012).

A plaintiff must show conduct that "exceeds all bounds usually tolerated by decent society.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'  Conduct on the part of the defendant that is merely insulting

or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Appleton*, 757 A.2d at 1062 (internal quotation marks omitted) (internal citations omitted).

Even when construed in a light most favorable to Plaintiff, it is unlikely that any reasonable person could conclude that Defendants' alleged conduct was extreme and outrageous.  First, subjecting Plaintiff to high noise levels, cool temperatures, and poor air quality resulting from a heating system does not appear to rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Appleton*, 757 A.2d at 1062.  Second, even if Defendants are responsible for Plaintiff's co-workers' alleged "unfounded criticism" of Plaintiff, allowing Plaintiff's co-workers to criticize Plaintiff for committing errors is likely not extreme and outrageous conduct.  *See, e.g.*, *Shuler v. Regency House of Wallingford, Inc.*, No. 3:05CV480 (RNC), 2006 WL 118383, at *4 (D. Conn. Jan. 13, 2006) (employer allowing plaintiff's coworker to make derogatory comments about plaintiff's race was not extreme and outrageous).  Finally, giving verbal warnings for errors committed in dispensing medication, even if such warnings were a pretext for retaliating against Plaintiff for complaining about conditions in the pharmacy, was routine employment action not aggravated by egregious or oppressive behavior and therefore not extreme and outrageous.  *See, e.g.*, *Hopkins v. New England Health Care Emps. Welfare Fund*, 985 F. Supp. 2d 240, 260-61 (D. Conn. 2013) ("An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and

outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner.").

**V.      CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED without leave to amend.  The Clerk is instructed to enter judgment in favor of Defendants and to close this case.


SO ORDERED at Bridgeport, Connecticut this twenty-fourth day of March, 2015.


 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE